IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| TIMOTHY CHEETHAM, SR.,<br><br>Petitioner,<br><br>vs.<br><br>STATE OF MONTANA, ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 20-50-H-DLC-JTJ<br><br><br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This case comes before the Court on pro se state Petitioner Timothy Cheetham's application for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

The Court is required to examine a petition for federal habeas corpus relief before requiring a response. See, Rules 3 & 4, Rules Governing § 2254 Cases. "If it plainly appears from the petition…that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." For the reasons explained herein, Cheetham is not entitled to relief and his petition should be denied.

**I.	Factual and Procedural History**

The Montana Supreme Court set out the facts of Cheetham's state court proceedings as follows:

1

In August 2014, a jury found Cheetham guilty of one count of Sexual Intercourse Without Consent (SIWC), a felony offense in violation of § 45-5-503, MCA; one count of Sexual Assault, a felony offense in violation of § 45-5-502, MCA; and one count of Sexual Abuse of Children, a felony offense in violation of § 45-5-625, MCA. The charges arose from Cheetham's sexual abuse of five-year-old N.S., the granddaughter of his then-wife. Cheetham was represented at trial by assistant public defender Steven Scott (Scott). On Scott's advice, Cheetham did not testify at trial.

After trial but prior to sentencing, Cheetham saw a reference in a Child Protective Services report to a medical report prepared following a forensic examination performed on N.S. by Dr. Jessie Salisbury of the Community Health Center in Butte, Montana (Salisbury Report). Cheetham brought this reference to Scott's attention. The Salisbury Report had not been disclosed to the defense and, prior to sentencing, Scott filed a motion to dismiss the charges against Cheetham for negligent destruction of evidence, arguing the State failed to preserve and disclose a potentially exculpatory medical report. The Salisbury Report stated that a "copious amount" of N.S.'s hymen was intact, but also stated this observation did "not negate the possibility of a penetration injury." When it was demonstrated that the State did not have a copy of the Report, and Scott subsequently obtained one, he withdrew his motion.

Following sentencing, Cheetham appealed his conviction, asserting the District Court abused its discretion by failing to conduct adequate inquiry into his request for substitute counsel, and that he was denied effective assistance of counsel by Scott's handling of the Salisbury Report. *State v. Cheetham*, 2016 MT 151, ¶ 1, 384 Mont. 1, 373 P.3d 45. This Court determined the District Court had not erred regarding Cheetham's request for substitute counsel. *Cheetham*, ¶ 28. We further determined that, although several reasons for Scott's approach to handling the Salisbury Report were reflected on the record, the effectiveness claim could not be resolved without further development of a record in a postconviction proceeding about Scott's tactical decisions. *Cheetham*, ¶ 36.

Cheetham filed a petition for postconviction relief, alleging Scott had rendered ineffective assistance of counsel by failing to investigate and utilize statements in the Salisbury Report, including that, after the alleged assault, N.S.'s hymen was intact and "normal," and by coercing Cheetham into choosing not to testify. The District Court held a hearing on Cheetham's

2

>petition and heard testimony from Cheetham, his expert witness Dr. Theodore N. Hariton, Scott, defense investigator Christine Munsey, and Dr. Salisbury. Dr. Hariton testified that a pre-pubescent girl's hymen would have shown signs of scarring had it been penetrated by an adult male penis, as alleged in the SIWC count. Dr. Salisbury testified that, while N.S.'s exam results could be considered "normal," she had observed a narrowing of the hymen that was "suspicious of a previous injury," and could not rule out a penetration injury. The District Court determined Cheetham had received effective assistance of counsel because Scott acted reasonably in his handling of the Salisbury Report, and in advising Cheetham against testifying.

*Cheetham v. State*, 2019 MT 290, ¶¶ 2-5, 398 Mont. 131, 454 P. 3d 673 (Mont. 2019).

On appeal from the denial of his postconviction petition, Cheetham argued the District Court erred in denying his ineffective assistance of counsel (IAC) claims against Scott. Specifically, Cheetham argued that Scott acted unreasonably in his failure to pursue the Salisbury Report and that Scott should have supported the Report's finding that N.S.'s hymen was "normal" with available expert testimony, such as that of Dr. Hariton. *Id*. at ¶ 10. The Court found that Cheetham failed to meet his burden under *Strickland*[1] of demonstrating that Scott's performance was deficient or unreasonable. *Id*. at ¶ 16. Because failure to meet the first prong was dispositive, the Court did not consider the second *Strickland*

---

[1] In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Court determined that in order to establish ineffective assistance of counsel, a defendant must prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. This *Strickland* test is discussed in detail below.

3

prejudice prong. *Id*. Cheetham next argued that Scott advised him not to testify at trial and that he was not prepared to testify or be cross-examined. *Id*. at ¶ 17. The Court concluded under the circumstances, that Scott's actions did not constitute a failure to exercise reasonable professional judgment as the record was clear that Scott did not forbid Cheetham from testifying, but strongly advised against it. *Id*. at ¶ 20. Again, Cheetham failed to meet his burden under the *Strickland* deficient performance prong; he was denied relief. *Id*.[2]

## II. Cheetham's Claims

Before this Court, Cheetham also advances claims of IAC, alleging: (i) Scott did not discuss with him, or utilize during trial, the available medical records which demonstrated the victim had an intact hymen after the sexual abuse was alleged to have occurred, (Doc. 1 at 4, ¶ 13(A)); (ii) Scott did not utilize experts to explain the significance of these medical records, *id*., and, (iii) Scott coerced him into not testifying at trial and failed to instruct him on how to provide effective testimony. *Id*.

Cheetham asserts the Montana Supreme Court wrongfully denied his claims in his postconviction appeal. *Id*. at 5. Cheetham asks this Court to remand his case to the District Court for a new trial with effective counsel. *Id*. at 7, ¶ 16.

---

[2] The Montana Supreme Court's decision on appeal from the denial of Cheetham's postconviction petition is discussed in greater deal below.

### III. Analysis

For the reasons explained below, Cheetham's claims do not survive deferential review and should be denied.

#### i. Legal Standards

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). ("A necessary predicate for the granting of federal habeas relief to respondents is a determination by the federal court that their custody violates the Constitution, laws, or treaties of the United States.").

Additionally, because the Montana Supreme Court has addressed the merits of Cheetham's claims, this Court's review is limited further. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [this] Court," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson*

*v. Williams*, 568 U.S. 289, 292 (2013).

AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, 576 U.S. 257, 269 (2015) (citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has instructed "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citations omitted); see also, *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)(describing the standard as "difficult to meet" and a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.")

Further, each of Cheetham's claims involves the purported ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief- deficient performance by counsel

6

and prejudice. 466 U.S. at 678. With respect to the performance prong, a petition must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id*. at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123, 129. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonably argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (internal citations omitted); *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.' ").

### ii. Claims 1 & 2- The Salisbury Report

In relation to the Salisbury report, Cheetham argued before the Montana Supreme Court that Scott's decision not to utilize the report or investigate it further was not based upon Scott's belief that the report was unhelpful, or even counterproductive, but instead was a result of Scott's own professional neglect. *Cheetham v. State*, 2019 MT 290, ¶ 10.

In relation to his decision not to utilize the report Scott testified his training indicated that there is "no correlation between having a hymen or not at to whether a female has had sexual intercourse." *Id.* at ¶ 12. The Court noted that Scott's understanding was consistent with information contained within the CPS summary that while the Salisbury Report indicated a "copious amount" of intact hymen, this finding "did not negate the possibility of a penetration injury." *Id.* Scott verified his understanding of the issue by consulting with several of his colleagues, who, after discussion, confirmed Scott's belief that the report was not exculpatory to Cheetham. *Id.* at ¶¶ 11, 14.

Much as he does before this Court, Cheetham argued that Dr. Hariton's expert testimony could have been introduced to support the use of the Salisbury Report at trial. *Id*. at ¶ 12. The Court noted that while Dr. Hariton testified Scott made an erroneous assessment of this evidence, there was also support in the record for Scott's strategy. Dr. Salisbury testified, in contradiction to Hariton, that "hymens stretch, injuries heal quickly, and that signs of injury do not always remain" thus reaffirming the Report's assessment that it could not rule out the possibility of a prior injury. *Id*. The Court also noted there was additional support for finding Scott acted reasonably in deciding not to introduce the Salisbury report. In the Report, Dr. Salisbury noted she observed narrowing of N.S.'s hymen which was "suspicious of a previous injury." *Id*. at ¶ 13. Additionally, at trial it was established that N.S. reported the abuse in 2013 after suffering dreams and flashbacks, but the Report indicated she had made prior reports of her grandfather touching "her private parts with his hands" as early as 2006, which would have corroborated the later 2013 disclosure. *Id*.

The Court noted that while introducing the Salisbury Report and supporting it with expert testimony may have been reasonable, the strategy pursued by Scott was not unreasonable. *Id*. at ¶ 14. His decision not to introduce the Report was supported by Dr. Salisbury's conclusions, the understanding of Scott and his colleagues, and avoided the introduction of findings contained in the report that

9

were potentially adverse to Cheetham. *Id*. Thus, Cheetham failed to meet his burden of demonstrating Scott's performance was deficient and that the District Court erred. *Id*. at ¶ 16.

While Cheetham disagrees with the Montana Supreme Court's resolution of the claims surrounding the Salisbury Report, he does not explain what he finds to be unreasonable. See, (Doc. 1 at 5.) While Scott could have introduced the Salisbury Report, such action would have also opened the door to countervailing expert testimony and the potential introduction of the entire CPS report in which the Salisbury findings were contained. Based upon the record before this Court, is appears Scott made a reasonable decision not to introduce the report. By electing not to do so, Scott avoided potentially exposing Cheetham to additional testimony or evidence that could have been damaging to the theory of the defense while also corroborating the victim's reports of abuse. There was a reasonable basis to support Scott's trial strategy.

Strategic decisions, such as the choice of a defense or which witnesses to present, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Cheetham has not met his burden to establish that Scott acted unreasonably or that he performed deficiently. Put another way, Cheetham has not shown that Scott "made errors so serious that he was not functioning as 'counsel' guaranteed by the

Sixth Amendment." *Strickland*, 466 U.S. at 687. Furthermore, given this Court's doubly deferential standard of review, Cheetham's burden is heightened. *See Cheney*, 614 F.3d at 995,   He simply cannot prevail.

A federal habeas court considering an ineffective assistance of counsel claim need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F. 3d 732, 737 (9th Cir.), cert denied, 525 U.S. 839 (1998). Because Cheetham has not established deficient performance, this Court need not address *Strickland* prejudice. These two claims should be denied.

### iii. Claim 3-Cheetham's Trial Testimony

Below, Cheetham explained Scott strongly advised him against testifying and that he was never prepared to adequately testify or be cross examined. *Id*. at ¶ 17. Cheetham claimed he repeatedly told his defense team he wished to testify in his own defense and that, although they would pay lip service to the fact it was his choice, there was never any preparation or discussion of Cheetham actually taking the stand. *Id*. Scott testified that he did, in fact, discourage Cheetham from testifying based upon Cheetham's "lack of memory, his substance abuse, his infidelity, and because he persistently advanced conspiracy theories about N.S." *Id*. at ¶ 18. Scott further explained Cheetham's explanations did not make a lot of sense and he was worried Cheetham's testimony would be used to impeach him on

11

cross-examination. *Id*. Scott was clear, however, that he advised Cheetham the decision of whether or not to testify was ultimately his decision to make. *Id*. The defense's investigator testified that both she and Scott both counseled Cheetham against testifying "because Mr. Cheetham had terrible times remembering dates or events or how they occurred in what order. But we told him that ultimately this was…was his case and his life. And that, if he felt strongly he should testify, then we would support his decision." *Id*.

The Court determined that given the circumstances, it was impossible to determined, under Strickland, that Scott's actions constituted a failure to "exercise reasonable professional judgment." *Id*. at ¶ 20, quoting, *Strickland* ,466 U.S. at 690. While Scott strongly dissuaded Cheetham from testifying, he did not forbid him from doing so. *Id*. The Court noted Cheetham and Scott both acknowledged it was clearly communicated to Cheetham that the decision of whether or not was his. *Id*. Accordingly, the Court held Cheetham failed to meet his burden of establishing deficient performance. *Id*.

"[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas,* 483 U.S. 44, 49 (1987). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution," including the Fifth, Sixth and Fourteenth Amendments. *Id.* at 51. The Ninth Circuit has also recognized that

12

"[a]n accused's right to testify is a constitutional right of fundamental dimension." *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir.1993), citing, *inter alia, Rock, supra,* at 51–53; *United States v. Edwards,* 897 F.2d 445, 446–47 (9th Cir.1990). While it is settled that Cheetham certainly had a right to testify, he does not explain what he believes to be unreasonable about the Montana Supreme Court's finding that he was aware of this right to testify, but elected, upon advice of counsel, not to do so.

Given the record before this Court, it appears that Scott and co-counsel acted reasonably in advising Cheetham not to testify. To the extent that Cheetham challenges Scott's strategic assessment advising him against taking that stand, that decision is virtually unchallengeable. *See Hutchins v. Garrison,* 724 F.2d 1425, 1436 (4th Cir.1983) ("Counsel's advice not to testify is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance."). Additionally, Cheetham waived his right to testify when he failed to object at trial to Scott's decision to call him to the witness stand. *See United States v. Pino–Noriega,* 189 F.3d 1089, 1095 (9th Cir.1999) ("When a defendant remains silent in the face of his attorney's decision not to call him as a witness, he waives the right to testify." (internal quotation marks omitted)); *United States v. Edwards,* 897 F.2d 445, 447 (9th Cir.1990) ( "Neither the prosecution nor the court was given any reason to think the defendant desired to testify. In such circumstances, to hold that

a defendant may abide by his lawyer's advice and not take the stand and then invalidate the trial because he so acted is not fair to the government.")

It was reasonable for Scott to counsel Cheetham against testifying, given the various concerns he had that such testimony could be detrimental to Cheetham's defense. Moreover, Cheetham has waived his right to advance such a challenge at this stage of the proceedings. Under the demanding deferential standard at issue here, Cheetham has not established Scoot performed deficiently. As both prongs of *Strickland* must be satisfied to establish a constitutional violation, a failure to satisfy either requires a petitioner's ineffective assistance of counsel claim be denied. *Strickland*, 466 U.S. at 697. Accordingly, this claim should also be denied.

### IV.    Conclusion

Cheetham's petition should be denied for lack of merit; his claims do not survive AEDPA review. See, 28 U.S.C. § 2254(d).

### V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Cheetham has not made a substantial showing that he was deprived of a constitutional right. Accordingly, this Court must afford deference to the Montana Supreme Court's decision. Further, Cheetham's IAC claims fail under the doubly deferential standards mandated by the application of both 28 U.S.C. § 2254(d) and *Strickland*. There are no close questions and there is no reason to encourage further proceedings in this Court. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. Cheetham's Petition (Doc. 1) should be DENIED.

2. The Clerk of Court should be directed to enter judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Cheetham may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Cheetham must immediately notify the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of his case without notice to him.

DATED this 12th day of November, 2020.

>*/s/ John Johnston*
>John Johnston
>United States Magistrate Judge